May it please the Court, I am Mark Reichel on behalf of Mr. Rafic Labboun. And for the Court's information, I was the attorney in the trial below. And my only hope is at the end of the argument the Court doesn't state that now I see why this guy lost. I'll begin with, I believe, the strong argument on behalf of Mr. Labboun is there was just insufficient evidence to convict this individual in this case. The only real evidence of criminality the government had was that at some point in August of 2002, he took money from his credit cards by getting a cash advance and possibly without the intent to repay that. He immediately moved to Lebanon, where he and his family are from, took his family to Lebanon. After that, there's absolutely no evidence that links him with the crime that's charged in the indictment. The crime that's charged in the indictment is that payments were made to these credit card accounts upon a closed bank account that belonged to him but had been closed for insufficient funds. There's no evidence he had anything to do with those payments. The only evidence is the process or the practice of the credit card companies when they take these payments over the phone is to ask a few security questions. Additionally, what really weighs in Mr. Labboun's favor are two important things. One, an individual deposited $60,000 into that MECU account in October of 2002 when the crime alleged in the indictment occurred. Additionally, he never reported the credit card stolen or lost or misplaced or anything. And I think anyone involved in any type of a crime where they're going to do this bust-out scheme or something, immediately after the crime is over or the attempts are over, it's very simple to make a claim that your card is lost or stolen and backdate it two weeks. But the government used that evidence in the other direction and says, well, he never said it was lost or stolen before he made these additional payments and charges. And so, consequently, the inference is it wasn't. He had no idea his cards were being used. There's no evidence whatsoever, I'm sure the Court recalls, but just to refresh, that there's no evidence that he was the individual that, number one, made the payments over the telephone to the credit card companies using this bank account. Well, the evidence is that this person, whoever it was, had very specific private information of his. Well, the testimony is very specific, but in reality, you're talking about simply something like either an address or telephone number or Social Security number, which in this day and age is very susceptible to hacking and to identity theft and so forth. And the most important part is that there's no evidence whatsoever that these attempted charges in Saudi Arabia were by Mr. Laboon under any circumstance. Except that he was in Saudi Arabia. He was in Saudi Arabia, but he wasn't there at the time of these. That's the only problem is he wasn't there at that relevant time period, his passports were in evidence. There's no dispute he could have been in Saudi Arabia, I believe, at the time that the charges were done, October of 2002. So there was no evidence preserved by – there was just no evidence preserved left to try somebody fairly in our system to convict them. You have an individual who moved, and thereafter his cards were used, and clearly there was a fraud done, but there's no evidence he was even the beneficiary, because the beneficiary is the individual trying to use them. And there's no evidence he was the individual trying to use them. So as a result, like I've said, anyone could commit this crime using a computer or an iPhone. And Mr. Laboon made no statements about it. He didn't take the stand. It wasn't that the jury just didn't believe his story. The fact of the matter is the government put on evidence of a crime, but there just wasn't evidence that Mr. Laboon was the individual involved. Additionally, the indictment didn't say it was part of a scheme with another. It didn't necessarily – it didn't charge aiding and abetting. What happened was during the trial, the government developed a different theme that was not in the indictment through the use of an expert to say, well, these crimes happen when someone else does the work for the individual. And that was this bust-out scheme. And the fact of the matter is the government put on evidence of a crime, but there just wasn't evidence that Mr. Laboon was the individual involved. And the fact of the matter is the government put on evidence of a crime, but there just wasn't evidence that Mr. Laboon was the individual involved. And I appreciate the government's efforts in that.  Kagan. There was a more extended sufficiency of the evidence argument that you made with respect to certain of the counts, and I would be interested in hearing it. I'm sorry, Your Honor. I missed the first part. There was a more specific sufficiency argument or indictment argument that you made with regard to certain of the counts. Counts 3, 4, 5, and 7. Now, first of all, were there – as I read the evidence, and I may well be wrong, there was only one count as to which there was no attempt to use the card. Is that right? I think that's correct. I think that was count 7. So there were three – the other three that you're talking about, there was an attempt to use the card that didn't succeed because it was declined. There was not an attempt to use the card. There was an attempt to get money off of that card by transfers, money transfers. Well, but to use it in some fashion. Yes. Correct, Your Honor. So that being the case, there should have been at least an attempt – if the theory was otherwise okay, then there should have been, at least for those three counts, at least an attempt to charge, right? Correct. So why – what's your argument about those three, just to start with those? With those three, there's still no evidence Mr. LeBoon had anything to do with them. I understand that, but you have another theory. I have another theory, Your Honor. Well, my argument is that this – that there was a – first of all, that clearly in my opinion, and I do want to reserve two minutes, and I apologize for not advising you that, but clearly this is an indictment, a trial that was – that amended the indictment. And I – pretrial, I motioned the court, discussed it with the court, that I wanted to stay to what was the scheme to defraud as alleged in the indictment that the grand jury issued an indictment upon. The grand jury never heard about a bust-out scheme. The grand jury never heard about a bill that failed. I'm going to leave all that aside. What I want to know is, if he in fact used the card, even if unsuccessfully, is that a violation of the statute with which he was charged? If he attempted to use the card after making a knowingly false payment and participated in – I think it is. So you don't have a theory problem with those three charges. Do you have a theory problem with count 7? Yes, Your Honor. Okay. Now, why is that? Why not? Thank you very much, Your Honor. Because all it results in is issuing a bad check. But it's only count 7 that you're talking about. I believe so, Your Honor. I think the other – of the 3, 4, 5, and 7, I believe there were attempts – and I apologize, maybe in my rebuttal I can clear that up – but I believe there were attempts to obtain money, not necessarily by an object, but I think there was an attempt to advance cash on those cards, which, with the – So with regard to the one where there was no attempt, you – but the bad check cases seem to be about bad checks passed not to a bank, but to a non-bank. In other words, if you go buy something at Macy's, the bad check cases say, well, you're not defrauding the bank, you're defrauding Macy's. But that's not true here, so why isn't the bad check good enough? Because – well, because then you turn, I believe, you turn bank fraud into a collection agency for the United – the United States becomes a collection agency for the banking industry, and what – Is there any case law saying that that's not within the definition of bank fraud? Well, Your Honor, to the Congress, I don't think there's anything from the Ninth Circuit which says as follows, that you have an outstanding debt to a credit card company, which is also a bank, like Citibank. Your credit card is Citibank, and you issue a bad – you write a bad check, a clearly bad check, a closed account to that bank. There's no case law from the Ninth Circuit that I could find that says that violates 1344 subsection I of the bank fraud statute, or subsection I, excuse me, of the bank fraud statute. The government's argument is that's not all that happened here, because as a consequence of the bad check, he's uncut credit, whether he used it or not. Yes, and he exposed it to a risk of – the risk of loss theory is what the government has stated. And unfortunately, I don't – first of all, that's not in the statute. It doesn't set forth that if you expose it to a risk of loss, that shall be sufficient enough. Additionally – For example, when somebody gives false information on a loan, isn't that – I mean, that's bank fraud, isn't it? And isn't that a risk of loss? It's because you're getting – you're representing that you have certain risk, but in fact, you have a different risk. That is a false statement. And what the courts have clearly held is that a bad check is not a false statement. There's no statement uttered whatsoever by it. It's not a false statement. And it is in the brief cited by the parties. I don't have that at my fingertips, but this is not a statement when a check is given. But if the bad check is part of an overall scheme charged in the indictment, that it's all part of an attempt to utilize the accounts in a certain way to gain unfairly access to money, that's different than just saying it's a bad check case. I think that's correct, Your Honor. The problem is in this indictment, paragraph 9 set forth in total the scheme, and it left out for counts 3, 4, 5, and 7 that there was ever any attempt to get additional funds. Paragraph 9 clearly stated that the fraud that would be proven for 3, 4, 5, and 7 was that bad checks were given, period. Now, with – excuse me – obviously, with knowledge that it was a bad check. So the indictment did set forth that portion. But then when we got to the trial, like I said, we began with all the evidence months prior about a buildup phase where Mr. LeBoon allegedly built up the credit cards, the balance on the credit cards by continuing to charge objects and – excuse me – advance funds, and that – with no intent eventually to pay down the road. So the gravamen of the trial became what happened prior to the paragraphs of the indictment. The gravamen of the trial began, you know, for the year prior to. And as a result, that's clearly something the grand jury didn't hear. It's not fair under our system of justice for shortly before a trial to begin that the paragraph of the indictment which says what the fraud is going to be at trial is literally wholesalely disregarded and said, well, it sounds like there's some defense evidence that that might not be true because the account was closed. But the evidence is he's long gone. How would he know the account is closed? The evidence is someone else put in $60,000 into that account, which was also a bad check, not his but someone else's. Kagan. Can you be specific about why you think the indictment was changed in trial? The indictment says he had outstanding balances due, so they proved that up. And then that he made a series of payments using funds drawn in a closed checking account, knowing they would never be paid, proved that up. And then he made some charges for at least some of the accounts. So what's the problem? Because the indictment states that what was the fraud was, in paragraph 9, like the Court has read, was that he had insufficient funds on a closed bank account.    So what's the problem? I'm reading from ER-28, ER-28 Excerpts of Record. And it's line 12, it begins, which is paragraph 9, directly from the indictment. The indictment doesn't mention a bust-out scheme, a conspiracy, aiding and abetting the use of others. Or it doesn't mention for accounts 3, 4, 5, and 7 that there were going to be future charges made. So what it states — I'm sorry. I didn't hear the last thing you said. And it doesn't state that for accounts 3, 4, 5, and 7 that the scheme was that in the future charges were going to be made on these accounts that had now had their balances reduced to zero by these false — by these fraudulent checks that were paid over the telephone. It states that the fraud really was. I mean, to wit, it states the fraud was paying off credit card accounts with, you know, a bank account that had previously been closed and then attempting to use those cards thereafter. And by the time trial rolled around, we dealt with other things. Additionally, just briefly, I would like to talk about the sentence that was issued as well. I don't think, in my experience, I just don't think there's been a case where an individual presented the mitigating factors that Mr. Leboon presented to the district court. And in essence, the district court literally just grabbed the guidelines and used those as not just the starting point, but as the only point. In my two-minute rebuttal, I'd like to address that. Very well. You may do so, counsel. We will hear from the government. Good morning, Your Honor. Hartley West for the United States. May it please the Court. There was no error, cumulative or otherwise, that warrants reversing the defendant's convictions and sentence here. I do intend to limit my argument to those issues raised by appellant, unless the Court has questions regarding some of the other issues in the briefs. Let's start with sufficiency of the evidence. The defendant agrees that bank fraud was committed here, but contests the sufficiency regarding his identity as the perpetrator. Well, he doesn't agree that bank fraud was committed, as we were discussing, but go ahead. Well, with regard to count 7. Okay. Okay. Excuse me. Thank you. Particularly identity and intent are the two elements that he challenges for the remaining counts. However, the evidence that came in. Is he right that with regard to the other three counts as to which there was no actual use, there was attempted use? There was attempted use shown. There were actual attempted authorizations on all of the counts where there was not an actual successful charge. Except for 7. Except for count 7. Okay. And I'll address the sufficiency of the evidence as to count 7 as well. But let's take all of the other charges together first. The evidence showed, as the Court already discussed, that Mr. LeBoon had never reported his credit cards lost, stolen or the subject of fraud. There were two hard copies of checks that had been submitted as the bad checks on two of the accounts. Both of those hard copies of checks bore Mr. LeBoon's signature. There were, on the other accounts, bad telephonic checks. And the evidence came in that in order to make a telephonic payment, the caller would have to provide not only the checking account number and the routing number and the check number, but personal financial information, such as mother's maiden name, Social Security number, or something like that. Now, on one of the call – on one of the cards, there was an attempted charge and there was a – the account notes showed that there was a call that was made when the attempted charge was declined, saying, this is Mr. LeBoon providing the financial – personal financial information, saying, I'm calling from out of the to see if he could get that purchase to go through since it had been declined. That's additional evidence. In addition to that, there was the Wells Fargo Bank account. That was important because that was an account that Mr. LeBoon opened right before leaving the United States. He transferred some money to it from his – from his account, and then he withdrew all of the money that he had deposited in it, leaving it empty and – or essentially empty. There was a little bit of money left in it that was withdrawn as service charges. But otherwise, there was no activity on that account for the entire duration until Mr. LeBoon's arrest. Now, he had that clean card, that card that was the only card not used in the fraud, he had that on his person at the time of his arrest. In addition, all of the credit card accounts, the addresses on those accounts, had been changed to a P.O. box here in this district that the defendant had been using on some of the credit card accounts while he was still here in the United States. So we have all of that evidence, in addition to the fact that the way the outstanding balances referenced in paragraph 9 accrued were by balance transfers from these credit card accounts to himself, his MECU checking account here, and then he withdrew those – all of that money, approximately $85,000 in cashier's checks before leaving the country. So that's actually how it all started, was with those – that's how he maxes out the credit cards and then he withdraws it. That's how he knows that his checking account is empty. In addition to that, we also have one of the credit cards actually being physically swiped at an attempted purchase in Saudi Arabia, and we have mid-cycle payments to the penny made by somebody who provided all of the telephonic personal security information identifying himself as Mr. LeBoon. That evidence shows that Mr. LeBoon knew how to make these payments remotely and that he was careful enough about his accounts, at least before this period, such that it allows the jury to infer he was keeping track enough to know that if something had happened, he would have reported that somebody was. And there was some testimony from the expert, which I would like to ask some questions about, you know, indicating that it could have been somebody else on his behalf. Was that argument made to the jury? Ginsburg-Demers, I must say that the whole expert evidence here I found quite troublesome. Not all of it, but some of it. I mean, certainly, insofar as she was giving evidence as to how credit cards worked and how the fact that there was a float and the fact that it was possible to have a window of time in which, I mean, just how the finances worked, that seemed totally appropriate. But when she started characterizing a type of scheme and gave it a name and then started giving it characteristics, including the fact that often they use other people, other people sometimes help them do it and persuade them to do it and so on, that seemed to be the only evidence in the whole record that there was another person involved. Is that right? No, that's not, Your Honor. The defense that suggested that Mr. Salehi, who was the individual who deposited the $60,000 check into the defendant's checking account in the middle of October of 2002, there was a suggestion by the defense that perhaps Mr. Salehi was behind this going on. And the government's response to that in closing argument was, first of all, the evidence showed that Mr. Salehi was here in the United States and could not have physically swiped that card abroad. But, moreover, that Mr. Salehi and Mr. Laboon enjoyed a working relationship during those many years, and, in fact, Mr. Salehi was waiting for Mr. Laboon to pick him up at the airport when he arrived shortly before his arrest. So it certainly didn't damage their relationship. I'm happy to address the expert stuff now and then circle back to the remainder of the sufficiency argument to address the question. Kagan. That might be helpful to me, because I understand that this has been a similar – somewhat similar material has been allowed in the drug cases. But this seemed to carry everything a few steps further, because you have this creation of sort of a world of its own, of a certain type of crime, as if there's a pattern that you can look it up in a book, and as somehow proving that that's what he did. Well, I don't think so, Your Honor. And the reason I don't think so is, let's talk about under Rule 704 first. So under Rule 704, Ms. Simcox, who was the expert, she was not concerned about that. I was really concerned about her entire foray into a – meaning, I'm not that concerned about her absolutely attributing intent to him, if that's what you're talking about. What I'm more concerned about is the fact that she was testifying to a sort of pattern of activity with lots of different pieces about other people being involved and multiple attempts and so on and so on, as if there were some sort of ascertainable scheme rather than the activities of a whole bunch of individual people. It's like you put an expert on murder. Well, a lot of people who murder do, you know, are likely to bury the body. I mean, it doesn't seem that there has to be some limit to this. Well, yes, there is a limit, but this comes well before that limit hits. And the reason for that is, in fact, bust-out frauds are a particular kind of fraud. They are akin to check-kiting, and there are particular patterns, which, as this Court talked about in Ankram. But if you don't allow prior bad acts of a particular person, how do you allow prior bad acts of other people to demonstrate what likely happened? That's really what you're doing. You're saying a lot of people do this bad thing, and so we should think this guy did it. No, I don't think that's what she's saying at all. She's talking about, as the Court mentioned, the structure, but also the modus operandi of people who perform bust-out schemes. And the pattern, the combination of events that are seemingly innocuous taken alone, but when you put them together, form what is actually recognized as a discrete type of fraud in financial institutions. And it's something that has become more prevalent, such that now this is 100 percent of what this expert does for Chase Bank is bust-out fraud schemes. And they're also homicide detectives. So do they come and testify about how murders are committed? Well, in a particular case, one might be able to testify about a modus operandi of a particular kind of case. But that's – but this is – this is like saying with check hiding, explaining how it works and explaining how it works. Explain how the finances were, seemed essential and perfectly fine. But that's a different matter than explaining the modus operandi of how criminals would manipulate this. Well, she did not – the Court exercised its discretion to not allow her to testify not only to the defendant's mens rea, but in fact that a bust-out scheme or that any fraud scheme had, in fact, occurred here. And she did not express an opinion as to that. She expressed an opinion as to what are typical hallmarks of a credit card bust-out fraud scheme. And that's where it ended. And because that was the extent of her testimony, there was no abuse of discretion by allowing that testimony to come in. And even if there were, the government argues that any error would have been harmless. But that can't be, because, I mean, some of the things that she said, I mean, even if there was a little bit of evidence of the involvement of this other man, she was – it seemed critical, or at least the government seemed to think it was, because it went on a great length about the fact that other people might be involved and how she has seen them have these conversations and how they direct the person how to do it and so on and so on. I mean, it must have – somebody must have thought it was pretty important, because it certainly went on at some length. Well, I certainly thought that it was helpful to the government's case, Your Honor. But I disagree that it was critical such that any error would not have been harmless on it. And that is because of the pieces of evidence that we've already talked about, but additional ones as well. Okay. Why don't you go back to your sufficiency argument? Well, we've already talked about Mr. Salehi, but going through all of the – all of the evidence that allowed the jury to find, rationally, that Mr. LeBoon was either in fact the person who was making these payments telephonically and mailing his checks with his signature already on them to the checking accounts, and then making these payments, because, as we know, Mr. Salehi, the other suggested person, was here in the United States. But at least to find – allow the jury to rationally find that if he was not doing it himself, he was aiding and abetting somebody else doing that, because somebody – he had to have given somebody not only the two physical checks that had his signature on it, but all of his checking account information with the routing number and the In addition to that, his personal financial information, the mother's maiden name, the Social Security number, that kind of information. On this evidence, a jury could rationally and reasonably have found sufficient evidence, and the government is entitled to that rational inference that the jury could have drawn under Neville's. Now, with regard specifically to Count 7, the evidence was that that account had already been suspended because there was nonpayment of the balance for too long. Too many cycles had gone through, so the account had been suspended. But the evidence is still sufficient there, because what it showed was the coordinated timing of these bad checks, and then the charges and the attempts. And in fact, the bad check that was received on Count 7 was dated October 10th, the same date as three of the other accounts received their bad checks. And the check numbers were sequential. I believe this one was 1367 and another one was 1366. So a jury looking at that can see, look, he tried to do the exact same thing here. He passed that bad check or he arranged for somebody else to pass that bad check or aided and abetted somebody else doing it with the intent to defraud. But in fact, he was frustrated by in completing that because the account had been suspended. But the attempt was still there. On the motion to dismiss argument. Kagan, was there a jury instruction on aiding and abetting? There was. And that is implicit, of course, in all of the counts. It doesn't need to be specifically stated in the indictment. What the indictment does specifically say, I disagree with Appellant about this, is it does specifically allege not only an execution of a scheme to defraud, but an attempted execution of a scheme to defraud. Each and every count in the indictment uses the words execution or attempted execution, alleges it in the conjunctive as and attempted execution. So that is encompassed in the indictment. And there's no dispute here that Judge White's jury instructions set forth all the elements of the fraud and the attempt in separate instructions? Not disputed at all, Your Honor. Anything further, counsel? The one other thing that I would like to address quickly, Your Honor, is that the district court did not err in imposing Mr. LeBoon's sentence. It sounds like the only issue being raised here at argument by Appellant is the substantive reasonableness of that, and of course, that's an abuse of discretion standard. Here, the district court explicitly recognized the defendant's support in his community, his helpfulness, his caring nature, the separation that he was suffering from his family, as well as the seriousness of the offense. And then the court said that it found 27 months, the low end of the guideline range, appropriate both as a recommendation from the guidelines, but more importantly, looking at the factors of 3553A and the reasonableness of such a sentence. Under these circumstances, imposing a low end of the guideline range was not an abuse of discretion. Unless there are any further questions, I'll submit on the briefs in the argument. No further questions. Thank you, counsel. Mr. Reichle, you have some reserve time.   of me, first of all, I think it was air as I brief, but additionally, if it is air, it cannot be anything but harmful air. She was the cleanup hitter for the government's case in all respects. She explained every aspect of Mr. LeBoon's innocence to be not, in fact, innocence, and added all sorts of elements about this buildup phase beforehand, explained about the buildup phase for the months beforehand, explained why innocent behavior like using the charge card was actually part of a criminal scheme, and explained how things could be committed by Mr. LeBoon when he was in Lebanon and had no access to everything in the northern district. But your defense is not that this wasn't a scheme to defraud. Your defense is my guy didn't do it. Yes, that's correct. So how did it hurt there? Because she clearly, for all intents and purposes, explained that he had to have been part of a scheme to defraud. He had to have been part of a criminal enterprise, because his role in it couldn't be innocence. It's like the person who says, I didn't know the drugs were put into that bag, and then the government brings in an expert to say no drug dealer, Kingpin, would put $250,000 worth of drugs in somebody's bag that they wouldn't know about because too many things can go wrong. But you're still arguing, I didn't know the drugs were there, so you can't pin it on me. Isn't it like that? It's similar, but also different, Your Honor. And I understand about the drug expert testimony in that regard. But in this regard, what she has done is in every way analyzed different factors and given a broader opinion than used in those types of cases. And finally, I think the sentence was substantively unreasonable, because not many people went through what Mr. Leboon went through. His wife and children are U.S. citizens. She cannot remove them from Lebanon, was the evidence the district court heard very clearly until he's done with his time and goes to get them. They've been there since, waiting for him since 2008, and that was a factor that is rarely presented, I think, ever to a district court at that size. Thank you, counsel. Thank you very much. The case just argued will be submitted for decision, and the Court will adjourn. Thank you, Your Honor. May it be adjourned. The first attempt at business is the Honorable United States Court of Appeals. The night is over. The court is adjourned.  Now stand and be seated. Thank you.
judges: Lasnik, O'scannlain, Berzon